**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:24-cr-020 (DJN) |
| | ) | |
| v. | ) | Conspiracy to Convert Trade Secrets |
| | ) | 18 U.S.C. § 1832(a)(5) |
| MEHRAN SHARIFI, | ) | (Count One) |
| | ) | |
| Defendant. | ) | |
| | ) | Forfeiture Allegation |
| | ) | |

## CRIMINAL INFORMATION

The United States Attorney charges that:

### COUNT ONE
(Conspiracy to Convert Trade Secrets)

At all times relevant to the Conspiracy:

## I. Introductory Allegations

### a. Victims

1.     General Electric Company was an American multinational conglomerate based in Boston, Massachusetts (together with its subsidiaries, "GE").

2.     Mitsubishi Heavy Industries, Ltd. was an engineering and electrical equipment manufacturer headquartered in Tokyo, Japan (together with its subsidiaries, "MHI").

3.     Dominion Energy, Inc. was a Virginia-based utility company that provides electricity to four million customers in Virginia, North Carolina, and South Carolina (together with its subsidiaries, "Dominion").

### b. Defendant

1

4.    MEHRAN SHARIFI was a resident of Hummelstown, Pennsylvania. Beginning in or about 2001 and continuing through 2023, SHARIFI worked as a Regional Sales Manager for gas turbine projects at COMPANY 1, a global industrial manufacturing conglomerate (together with its subsidiaries, "COMPANY 1"). During his tenure at COMPANY 1, SHARIFI obtained several gas turbine related patents. As part of his employment at COMPANY 1, SHARIFI worked alongside Michael Hillen and others in securing Dominion business on behalf of COMPANY 1.

### c.   Other Conspirators

5.    Theodore S. Fasca was a resident of Richmond, Virginia, within the Eastern District of Virginia.[1] From in or about 2005, and continuing through in or about August 2020, Fasca worked at Dominion. From 2008 and continuing through December 2019, Fasca was a manager in Dominion's Generation System Planning group, which focused on positioning Dominion to meet future customer energy needs. From in or about December 2019, and continuing through his date of his resignation in or about August 2020, Fasca worked as the director of the Generation System Planning group at Dominion.

6.    Michael Hillen was a resident of Midlothian, Virginia, within the Eastern District of Virginia.[2] Beginning in 2011 and continuing through 2023, Hillen worked as an Account Manager in Power Generation at COMPANY 1. Beginning in or around 2015 and continuing through August 10, 2020, Hillen was responsible for all sales to Dominion.

---

[1] Theodore S. Fasca separately pled guilty in connection with the same matter. *See United States v. Theodore Fasca*, Case No. 3:23-cr-83.

[2] Michael P. Hillen separately pled guilty in connection with the same matter. *See United States v. Michael Hillen*, Case No. 3:23- cr-120.

7.      John Gibson was a resident of Port Orange, Florida. Beginning in or about 1987 and continuing through in or about June 2020, Gibson worked in various roles at COMPANY 1, a global industrial manufacturing conglomerate (together with its subsidiaries, "COMPANY 1"). Gibson was the Executive Vice President of Power Generation and the Head of Sales for North America at COMPANY 1, responsible for the sale of all COMPANY 1 fossil power generation products in North America.

8.      From in or about 2018, and continuing through in or about 2020, CC-4 was a resident of the United Arab Emirates and the Chief Executive Officer for Power Generation at COMPANY 1.

### d. Dominion Peaker Project Background

9.      In approximately March 2019, Dominion sought to build a "Peaker" gas turbine plant in Chesterfield, Virginia, within the Eastern District of Virginia. Peaker plants are combustion turbine plants designed to add electricity generation capacity to alleviate high grid load and improve electric grid resiliency. To build the plant, Dominion opened a competitive, closed bid process soliciting requests for proposals from qualified companies. The bid process involved such qualified companies not only providing the equipment for the Peaker Project, but also providing long-term agreements for servicing any equipment provided. In total, the project was estimated to cost Dominion upwards of $500 million by Dominion's Rule 30(b)(6) witness.

## II.    Non-Disclosure Agreements

10.     As part of the closed bid solicitation process, GE and MHI each executed separate reciprocal non-disclosure agreements ("NDAs") with Dominion, governing the use and disclosure of confidential and proprietary information exchanged throughout the bid process. On

or about February 28, 2019, GE and Dominion executed an NDA. Thereafter, on or about March 7, 2019, MHI and Dominion executed an NDA with similar terms to the agreement with GE.

11.     The GE and MHI NDAs with Dominion both defined "Confidential Information" as: "[A]ll information of whatever nature, whether or not patentable or copyrightable, in any format relating to the Purpose."[3] The definition of Confidential Information under the NDA further encompassed "all information disclosed to either party that is considered confidential to the disclosing party, including without limitation proprietary technical and business information, trade secrets, . . .formulae, . . .financial information, . . .and any other information designated by the Disclosing Party as confidential or proprietary."

12.     The definition of "Confidential Information" expressly excluded "information that: (a) at the time of disclosure by Disclosing Party, was in the public domain; (b) after disclosure by the Disclosing Party is lawfully published or otherwise becomes part of the public domain; (c) was in the Receiving Party's possession at the time of disclosure to the Receiving Party and was not acquired by the Receiving Party, directly or indirectly, under an obligation of confidence; or (d) after disclosure to the Receiving Party, is received by the Receiving Party from a third party who did not acquire it under an obligation of confidence."

13.     The NDAs required each party to: "(a) protect Confidential Information from disclosure as if it were its own confidential and proprietary information; (b) not directly or indirectly, without express written permission of the Disclosing Party, use any of the Disclosing Party's Confidential Information for any purpose other than the limited purpose of evaluating a

---

[3] The "Purpose" was defined as "limited...[to] facilitating discussions and possible negotiations related to a transaction between Dominion Energy Virginia and [GE and MHI, respectively] for the supply of combustion turbines. . . and for no other purpose."

potential future contractual relationship as described above; (c) ensure that each of its officers, directors, employees, consultants and legal counsel…abide by the obligations of this Agreement…and (g) not use Disclosing Party's Confidential Information to prepare to compete, compete, or induce or assist others to compete with the Disclosing Party."

14. COMPANY 1 and Dominion executed an NDA on or about August 14, 2018.

15. The NDA stated that "in order to analyze and evaluate the Project, the Parties need to exchange certain confidential and proprietary information" and "each Party is willing to make such disclosure only pursuant to the terms of this Agreement."

16. The NDA further defined "Confidential Information" as "any information that is owned or controlled by the Disclosing Party. It also includes information of third parties in possession of Disclosing Party that Disclosing Party is obligated to maintain in confidence."

### III. Initial Submittal of Bids to Dominion

17. GE, MHI, and COMPANY 1 all submitted bids in response to a request for proposal issued by Dominion for the Peaker Power plant project on or about May 10, 2019.

### IV. GE and MHI Confidential Information

18. At all times relevant to the conspiracy, GE and MHI each treated certain technical and pricing information related to the commercial manufacture of combustion turbines as confidential, including: (1) certain estimated performance parameters of various combustion turbines classes; (2) mathematical formulas related to maintenance intervals of combustion turbines; and (3) pricing for various combustion turbine aspects (*e.g.*, unit pricing and bulk pricing for turbine sales, options pricing for various features that improve turbine efficiency and output capacity, and long term service agreement pricing). Some of this information (hereafter "GE and MHI Confidential Information") was: (1) information that was not in the public

5

Case 3:24-cr-00020-DJN    Document 1    Filed 02/12/24    Page 6 of 15 PageID# 6

domain; (2) information that was only disclosed to Dominion (by GE and MHI, respectively) pursuant to NDAs; (3) information for which GE and MHI took steps to preclude widespread disclosure; (4) information over which GE and MHI, respectively, had the exclusive right to determine when and to what extent such information was disclosed publicly, if at all; (5) information that derived independent economic value from not being in the public domain; and (6) information that encompassed trade secrets, confidential information, and proprietary business information.[4]

19.    Moreover, such GE and MHI Confidential Information were all related to and included in products and services used in and intended for use in interstate and foreign commerce, to wit: (1) combustion turbines that were produced for interstate and foreign commerce by being manufactured, developed, and readied outside of Virginia for subsequent installation in Chesterfield, Virginia (within the Eastern District of Virginia); (2) combustion turbines that were placed in interstate and foreign commerce through their transportation from outside of Virginia to the Eastern District of Virginia for installation; and (3) combustion turbine parts that were produced for interstate and foreign commerce by being manufactured, developed, and readied outside of Virginia for subsequent installation in Chesterfield, Virginia (within the Eastern District of Virginia).

---

[4] Sharifi knew and understood that GE and MHI Confidential Information were trade secrets within the meaning of 18 U.S.C. § 1839(3). Furthermore, as Sharifi knew, the GE and MHI Confidential Information were in fact trade secrets because: (1) GE and MHI each took reasonable measures to keep their information secret; and (2) the information derived independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure and use of the information.

6

## V.    Statutory Allegation

20.    Beginning on a date unknown but no later than on or about May 23, 2019, and continuing through in or about June 2019, in the Eastern District of Virginia and elsewhere, defendant MEHRAN SHARIFI did knowingly and willfully combine, conspire, confederate, and agree with co-conspirators, known and unknown, with the intent to convert trade secrets that were related to and included in a product produced for and placed in interstate and foreign commerce to the economic benefit of someone other than the owners of the trade secrets, and intending and knowing that the offense would injure the owners of the trade secrets, to:

    a.   steal and without authorization appropriate, take, carry away, and conceal, and by fraud, artifice, and deception obtain GE's and MHI's combustion turbine-related trade secrets, in violation of Title 18, United States Code, Section 1832(a)(1);

    b.   without authorization copy, duplicate, sketch, draw, photograph, download, upload, photocopy, replicate, transmit, deliver, send, mail, communicate, and convey GE's and MHI's combustion turbine-related trade secrets, in violation of Title 18, United States Code, Section 1832(a)(2); and

    c.   receive and possess GE's and MHI's combustion turbine-related trade secrets, knowing the same to have been stolen and appropriated, obtained, and converted without authorization, in violation of Title 18, United States Code, Section 1832(a)(3);

and committed at least one overt act in order to effect the object and purpose of the conspiracy, all in violation of Title 18, United States Code, Section 1832(a)(5).

21.     It was the object and purpose of the conspiracy for the conspirators to obtain GE and MHI Confidential Information in order to: (1) improve COMPANY 1's bid for the Dominion Peaker Project; and (2) to enrich COMPANY 1 while causing economic harm to GE and MHI.

### The Ways, Manner and Means of the Conspiracy

22.     The ways, manner, and means by which SHARIFI and his co-conspirators sought to accomplish the object of the conspiracy included, but were not limited to, the following:

a.  With the intent to influence the Dominion Peaker Project bid process, Hillen, SHARIFI, and other employees at COMPANY 1 utilized COMPANY 1 funds to provide gifts, including football game tickets, hotel accommodations, and dinners, to Fasca and other Dominion employees prior to and during the bid process. COMPANY 1's policy permitted such expenditures to strengthen COMPANY 1's business relationship with Dominion.

b.  Soon after COMPANY 1, GE, and MHI submitted bids to Dominion on or about May 10, 2019, Hillen and Fasca coordinated to have Fasca use his sensitive position of trust within Dominion to misappropriate GE and MHI Confidential Information and then disclose the same to Hillen.

c.  Hillen and Fasca organized to funnel GE and MHI Confidential Information through numerous private email accounts (including through Hillen's wife's Hotmail email address, Fasca's personal Google email

address, and Hillen's personal Yahoo address) to conceal the illicit

disclosure of GE and MHI Confidential Information to COMPANY 1.

d.  Hillen thereafter strategically disseminated GE and MHI Confidential

Information to SHARIFI, who subsequently strategically disseminated GE

and MHI Confidential Information to Gibson and others within

COMPANY 1.

e.  Beginning at least on or about May 24, 2019, and continuing through at

least on or about June 24, 2019, Gibson and other COMPANY 1

employees received GE and MHI Confidential Information from SHARIFI

as part of the conspiracy. SHARIFI, knowing and understanding the nature

of the Confidential Information he had obtained, used that information to

enrich COMPANY 1 and to the detriment of GE and MHI.

f.  Knowing the GE and MHI Confidential Information were improperly

obtained, SHARIFI nevertheless strategically disseminated such GE and

MHI Confidential Information to others within COMPANY 1.

g.  SHARIFI's dissemination of GE and MHI Confidential Information was

calculated to provide COMPANY 1 with a competitive advantage in the

bid for the Dominion Peaker Project, to the detriment of GE and MHI.

h.  After learning of GE's and MHI's bids for the Dominion Peaker Project,

SHARIFI apprised Gibson of the likely need to change COMPANY 1's

bid. Gibson then obtained approvals within COMPANY 1 that authorized

COMPANY 1 to submit a lower bid to Dominion. Specifically, on or

about May 30, 2019, COMPANY 1 used the improperly derived GE and

MHI Confidential Information to resubmit a lower bid for the Dominion

Peaker Project, undercutting GE's bid, which was, by some metrics, more

competitive than COMPANY 1's bid at the time.

    i.   At all times relevant to the conspiracy, SHARIFI, his co-conspirators, and

COMPANY 1 knew (or remained willfully blind to) the fact that the

disclosed GE and MHI Confidential Information was information

COMPANY 1 was not entitled to have.

*Overt Acts in Furtherance of the Conspiracy*

First Disclosures of Confidential Information & COMPANY 1 Rebid

23.    On or after May 10, 2019, Hillen called Fasca to inquire into "the numbers" of

GE's and MHI's bids for the Dominion Peaker Project in order to ascertain whether COMPANY

1's bid had been competitive. Fasca explained that he did not have access to the confidential bid

information, but advised Hillen that Fasca could uncover the confidential bid information if

Hillen was interested. Understanding that GE and MHI Confidential Information should not be

disclosed to COMPANY 1 employees, Hillen asked Fasca to do so.

24.    As Hillen and Fasca well knew, Hillen was inquiring about GE and MHI

Confidential Information.

25.    Thereafter, Fasca provided Hillen over the phone with the top line bid amounts by

GE and MHI. Those top line bid amounts, as Hillen and Fasca well knew, constituted GE and

MHI Confidential Information.

26.    On or about May 20, 2019, SHARIFI, Hillen, and other members of the Peakers Project bid team for COMPANY 1 held a conference call to discuss the confidential information that Hillen had obtained during his call with Fasca. Hillen advised SHARIFI and the other COMPANY 1 employees on the call that this information had been obtained from a Dominion employee.

27.    On or about May 23, 2019, consistent with and responsive to Hillen's stated interest in the confidential bid information of GE and MHI, Fasca emailed documents containing GE and MHI Confidential Information from his Dominion email address to Fasca's personal Google email address and subsequently from this Google email address to Hillen wife's Hotmail email address. The GE and MHI Confidential Information contained in these documents encompassed unit pricing details for the sale of various numbers of combustion turbines, turbine emissions specifications, and options pricing for various features that improve turbine efficiency and output capacity.

28.    Hillen then forwarded the email from his wife's Hotmail email address to his own Yahoo email address and subsequently to his email address with COMPANY 1. Thereafter, Hillen forwarded the GE and MHI Confidential Information to SHARIFI.

29.    These transmissions caused the GE and MHI Confidential Information to be electronically sent between the Eastern District of Virginia and states outside of Virginia (including to and through Yahoo servers located in California).

On or about May 24, 2019, after SHARIFI received the May 23, 2019 email from Hillen containing confidential information, SHARIFI sent a text message to other COMPANY 1 Peakers Project bid team members agreeing that they should conduct "an evaluation analysis."

11

30.    On or about May 24, 2019, based on the received GE and MHI Confidential

Information, SHARIFI sent an email to Gibson and other COMPANY 1 executives entitled,

"Dominion – Peaker Update (Confidential)." SHARIFI stated, among other things, that GE had

"an approximately $7.5M (3 block) Capital advantage…[and g]iven this Mike and I believe we

should keep our faith in our hand as best we can and if possible provide Dominion further price

reduction."

31.    The next day, on or about May 25, 2019, Gibson forwarded the email from

SHARIFI to other COMPANY 1 employees responsible for business intelligence, who

concluded "[b]ased on received Dominion feedback" that "we would have to drop our 3 block

price…by $1'5 [$1.5 million] to tie GE." On or about May 25, 2019, Gibson sent an email to a

separate COMPANY 1 employee, stating, "On a pure $/kw [dollar per kilowatt metric], [GE] are

just lower. We may need a minor price move. I know we were stressed on the financials but 6

units is big and I hate to lose this one."

32.    On or about May 30, 2019, CC-4 sent an email to Gibson, COMPANY 1 senior

executives, and certain members of the Board of Directors of COMPANY 1 with the title,

"URGENT: Dominion Bid Modifications." In this email, CC-4 requested approval to reduce

COMPANY 1's bid by $3 Million. CC-4 obtained such approval the same day. Gibson

memorialized this approval in an email to CC-4 and other COMPANY 1 executives, stating: "All

clear. Bid approved by [COMPANY 1's parent company]."

33.    As a result, on or about May 30, 2019, COMPANY 1 submitted a revised bid offer to Dominion, reducing COMPANY 1's proposed price to make COMPANY 1's bid more competitive in relation to GE's bid and undercutting GE's bid by certain cost metrics.

34.    The same day, on or about May 30, 2019, SHARIFI sent a text message to Gibson, stating, "Just wanted to thank you for your support and help . . .Very much appreciated." Gibson responded, "We need to win this. I have promised it."

Subsequent Solicitations, Disclosures of Confidential Information, and Bid Award

35.    From on or about May 31, 2019, and continuing through on or about June 20, 2019, on at least five separate occasions, Fasca sent additional GE and MHI Confidential Information to Hillen, who then forwarded the information to SHARIFI within COMPANY 1.

36.    For instance, on June 14, 2019, Fasca sent GE and MHI Confidential Information from his Dominion email address to his personal Google email address and subsequently from his Google email address to Hillen's email address with COMPANY 1. Thereafter, Hillen disseminated this GE and MHI Confidential Information to SHARIFI.

37.    Subsequently, on or about June 24, 2019, SHARIFI sent this same GE and MHI Confidential Information to Gibson via email, which included the word "Confidential" in the subject line. The content of the email stated, "John, As discussed this afternoon. . ."

38.    As another example, on or about June 20, 2019, Fasca sent additional GE and MHI Confidential Information to Hillen's email address with COMPANY 1. The confidential information consisted of MHI's revised bid. Notably, this document was marked "MHPS Proprietary & Confidential Information." Thereafter, Hillen disseminated this confidential

information to SHARIFI. The same day, SHARIFI forwarded the same file to Gibson with the subject line, "Confidential."

39. COMPANY 1 won the bid for the Peaker Project with Dominion.

## VI. Sharifi's Statements Regarding Disclosure

40. In a sworn deposition on or about August 12, 2021, SHARIFI acknowledged he received and further disseminated confidential bid information, specifically GE's bid price, to allow COMPANY 1 to utilize the information to win the Dominion Peaker's Project.

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant is notified that, if convicted of the offense alleged in Count One of this Criminal Information, the defendant shall forfeit to the United States:

    a. Any article, the making or trafficking of which is prohibited by 17 U.S.C. § 506, or 18 U.S.C. §§ 2319, 2319A, 2319B, 2320, or Chapter 90 of Title 18 of the United States Code;

    b. Any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of the violation; and

    c. Any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of the violation.

If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

14

(In accordance with Title 18, United States Code, Section 1834, with reference to Title 18, United States Code, Section 2323.)

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:

Kenneth R. Simon, Jr.
Virginia Bar No. 87998
Avi Panth
Virginia Bar No. 92450
Assistant United States Attorneys
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email:  Kenneth.Simon2@usdoj.gov
        Avishek.Panth@usdoj.g